Wiest et al., Appellants, *v.* Mt. Lebanon School District.

Argued September 25, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Marjorie H. Matson* and *Thomas Hollander,* for appellants.

*Donald C. Bush,* with him *James C. Kletter,* and *Anderson, Moreland & Bush,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, May 22, 1974:

On April 26, 1973, a complaint in equity was filed by fifty-four plaintiffs seeking to enjoin the Mt. Lebanon School District from including an invocation and benediction at the graduation ceremonies of Mt. Leba-

non High School scheduled for June 12, 1973.[1] Ten days earlier at a regular public meeting of the Board of Directors of the School District a commencement program which provided for an audible invocation and benediction had unanimously been adopted. The case was submitted as a case stated to a specially convened three-judge court sitting en banc. Briefs were filed and oral argument was held, and on May 18, 1973, an adjudication was made dismissing the complaint. This direct appeal followed, and we now affirm.

The stipulation of facts, in addition to the adoption of a commencement program by the School Board, shows the following: The Mt. Lebanon School District is established pursuant to the Public School Code of 1949, P. L. 30, 24 P.S. §1-102 *et seq.,* and provides public education within Mt. Lebanon Township. The commencement exercise is a sixty-year old tradition which is held after all courses of study by the graduating seniors are completed. Attendance at the commencement exercise is voluntary, but usually more than ninety percent of the graduating class attends. Those who do not attend may obtain their diplomas at the high

---

[1] Appellants here include two parents of members of the 1973 graduating class of the high school, a member of the 1973 graduating class through his mother and natural guardian, and the mother of a member of the class of 1974. Although appellants' standing was not questioned below, we note that since the basis of the claim is that the program for the *1973* commencement allegedly violates rights guaranteed under the first amendment to the United States Constitution and article I, section 3, of the Pennsylvania Constitution, the only persons having standing to complain are members of that graduating class, either individually or as represented by a next friend. The rights of these plaintiffs are now technically moot since they have already been graduated. We will not dismiss the appeal on that basis, however, since we recognize that the short time between the announcement of the commencement program and commencement exercises would otherwise effectively deny appellate review of this type of litigation. *See, e.g., Roe v. Wade,* 410 U.S. 113 (1973).

school principal's office any time after the day of commencement.

Appellants premise their claim for relief on the free exercise clause of the first amendment to the United States Constitution, the establishment clause of the first amendment,[2] and article I, section 3, of the Pennsylvania Constitution. We find that the court below properly applied these constitutional provisions to the facts of this case and did not err in dismissing appellants' complaint.

## I.

The free exercise clause recognizes the value of religious training, teaching and observance, and in particular, "the right of every person to freely choose his own course with reference thereto, free of any compulsion from the state." This clause acts to withdraw from legislative power, "the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority. Hence it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion." *Abington School District v. Schempp,* 374 U.S. 203, 222-23 (1963).

In a case stated we are confined to the facts presented to the court by the parties, and we cannot go outside of the case stated for its facts, nor assume them by way of inference. *Commonwealth v. Howard,* 149

---

[2] The fourteenth amendment incorporates the protection of the free exercise clause and the establishment clause to render the legislatures of states as incompetent as Congress to make laws respecting an establishment of religion or prohibiting the free exercise thereof. *Cantwell v. Connecticut,* 310 U.S. 296 (1940). This protection extends not only against the state itself but also "all its creatures—Boards of Education not excepted." *Board of Education v. Barnette,* 319 U.S. 624 (1943).

Pa. 302, 24 A. 308 (1892); *Kelly v. Urban,* 136 Pa. Superior Ct. 20, 7 A. 2d 12 (1939). Those facts show that attendance at the graduation ceremonies was purely voluntary. There was no allegation or showing that the inclusion of an invocation and benediction in the commencement program would have any coercive effect upon appellants in the practice of their religion.[3] Accordingly, the court below properly dismissed the free exercise claim.

## II.

Although the fact that the observance of a religious exercise is voluntary may serve to free that exercise from the limitations of the free exercise clause, the same is not true with regard to the establishment clause. This point was aptly stated by the United States Supreme Court in *Engel v. Vitale,* 370 U.S. 421, 430 (1962) : "Although these two clauses may in certain instances overlap, they forbid two quite different kinds of governmental encroachment upon religious freedom. The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce nonobserving individuals or not." In determining whether governmental activity, including school board resolutions, runs afoul of the establishment clause, the pertinent inquiry

---

[3] See the concurring opinion of Mr. Justice DOUGLAS in *Abington School District v. Schempp,* 374 U.S. 203, 228-29 : "In these cases we have no coercive religious exercise aimed at making the students conform. The prayers announced are not compulsory, though some may think they have that indirect effect because the non-conformist student may be induced to participate for fear of being called an 'oddball.' But that coercion, if it be present, has not been shown. . . ."

is into the purpose and primary effect of the resolution. If either the purpose or primary effect is the advancement or prohibition of religion, then the resolution or enactment exceeds the scope of legislative power as circumscribed by the first amendment. In other words, in order to withstand the strictures of the establishment clause there must be a secular legislative purpose *and* a primary effect that neither advances nor inhibits religion. *McGowan v. Maryland*, 366 U.S. 420 (1961); *Everson v. Board of Education*, 330 U.S. 1 (1947).

While it would be possible to excise various portions of opinions of the United States Supreme Court to support the position advocated by appellants, divorcing the language from the facts of a case serves but to distort its holding. The United States Supreme Court has never been faced with a case in the factual posture of that now before this Court.[4] However, in dictum, that Court has indicated that every technical infringement upon the first amendment need not be enjoined. Otherwise, in the words of Mr. Justice DOUGLAS: "Prayers in our legislative halls; the appeals to the Almighty in the messages of the Chief Executive; the proclamations making Thanksgiving Day a holiday; 'so help me God' in our courtroom oaths— these and all other references to the Almighty that run through our laws, our public rituals, our ceremonies would be flouting the First Amendment. A fastidious atheist or agnostic could even object to the supplication with which the Court opens each session: 'God save the United States and this Honorable Court.' " *Zorach v. Clauson*, 343 U.S. 306, 312-13 (1952). In a similar vein, in his concurring opinion in *Chamberlain v. Board of Public Instruction*, 377 U.S.

---

[4] This is not a case dealing with the recital of a prayer or a portion of the Bible, but one where the content of that which is sought to be enjoined was not and could not have been known when the action was brought.

402 (1964), Mr. Justice DOUGLAS agreed that a challenge to the constitutionality of baccalaureate services in public schools was properly dismissed since it did not present a substantial federal question.

The court below found that the commencement exercises at Mt. Lebanon High School were just such a public ritual or ceremony which Mr. Justice DOUGLAS may have had in mind.[5] We agree that the practice here is a permissible accommodation between church and state. Moreover, the burden of proof in a challenge to the constitutionality of the acts of a school board is upon the challengers. The facts as presented to the court below are, in any event, insufficient to support a finding that either the purpose or primary effect of the resolution providing for an invocation and benediction at the commencement exercises was to advance religion.

Not only does the present case withstand the application of formulas developed as guidelines in this type of case, but we are also convinced that the more fruitful inquiry suggested by Mr. Justice BRENNAN is satisfied here, *i.e.*, "whether the practices here challenged threaten those consequences which the Framers deeply feared; whether, in short, they tend to promote that type of interdependence between religion and state which the First Amendment was designed to prevent." *Abington School District v. Schempp, supra*, at 236 (concurring opinion). Accordingly, we concur in the lower court's dismissal of the complaint on a finding of no violation of the establishment clause.

---

[5] Likewise, in a similar case brought against appellee school district in federal district court one year prior to the instant case, the Court noted that "graduation ceremonies at Mt. Lebanon Township School District are just that—*i.e.*, they are ceremonial and in fact not a part of the formal, day-to-day routine of the school curriculum to which is attached compulsory attendance." *Wood v. Mt. Lebanon Township School District*, 342 F. Supp. 1293, 1294 (W.D. Pa. 1972).

## III.

Appellants' final claimed basis for relief is that the invocation and benediction at the high school commencement are in derogation of article I, section 3, of the Pennsylvania Constitution of 1874, which reads as follows: "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship." The principles enunciated in this part of our Constitution reflected a concern for the protection of the religious freedoms of Pennsylvanians long before the first amendment to the United States Constitution was made applicable to the states through the fourteenth amendment. Provisions identical to the above section were contained in the Constitutions of 1790 and 1838 and a similar provision was contained in the Constitution of 1776. On the authority of this provision, this Court has prohibited the use of a public schoolroom for Catholic religious instruction after hours, *Hysong v. Gallitzin Borough School District,* 164 Pa. 629, 30 A. 482 (1894), and the use of public school property for sectarian religious purposes when school was not in session, *Bender v. Streabich,* 182 Pa. 251, 37 A. 853 (1897). The protection of rights and freedoms secured by this section of our Constitution, however, does not transcend the protection of the first amendment of the United States Constitution. Our prior discussion is, therefore, equally apposite to this issue. Furthermore, we do not feel that an invocation and benediction are the type of activity at which this section of our Constitution was aimed.

This claim, therefore, was also properly dismissed by the court below.

Decree affirmed. Costs on appellants.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that the hearing court on the case stated properly denied the request for injunctive relief and that its decree should be affirmed.

Appellants have failed to establish entitlement to the equitable relief requested. Here, the record does not disclose, as it could not, the content of the planned invocation and benediction. No court can enjoin speech on the basis of an unsupported assertion that it may offend the sensibilities of some prospective listener. Neither we nor the hearing court could properly assume that those invited to deliver the invocation and benediction at the graduation ceremony would not take account of the public and ceremonial nature of the occasion and the presence of students and adults of all persuasions. *Zorach v. Clauson*, 343 U.S. 306, 312-13, 72 S. Ct. 679, 683 (1952). So too there is no basis for concluding that a speaker chosen to emphasize the seriousness of the public commencement would not fashion an appropriate message which neither requires any individual to participate in an affirmation which might run counter to his personal belief nor places the state's imprimatur on any sectarian declaration. *School District v. Schempp*, 374 U.S. 203, 83 S. Ct. 1560 (1963).

In the absence of a showing that the planned exercises would infringe the first amendment rights of any individual, an injunction is unavailable.

Mr. Justice MANDERINO joins in this concurring opinion.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

While I concur in the decision of the Court, my reasons are somewhat different, at least in emphasis, from

those of my brethren. Because an important constitutional issue is involved, I consider that I should state what my reasons are.

It is well to recognize, at the outset, that the duty of the Supreme Court of the United States, and likewise of state courts, to expound the meaning of the Constitution has, in the words of Mr. Justice BRENNAN, "encountered few issues more intricate or more demanding than that of the relationship between religion and the public schools." *Abington School District v. Schempp,* 374 U.S. 203, 230, 10 L.Ed.2d 844, 863 (concurring opinion). As Mr. Justice GOLDBERG put it, concurring in the same case, "delineation of the constitutionally permissible relationship between religion and government is a most difficult and sensitive task, calling for the careful exercise of both judicial and public judgment and restraint". 374 U.S. at 305. And Chief Justice BURGER has said that "candor compels the acknowledgment that we can only dimly perceive the boundaries of permissible government activity in this sensitive area of constitutional adjudication". *Tilton v. Richardson,* 403 U.S. 672, 678, 29 L.Ed 790 (1971).

There can be no doubt that the Mt. Lebanon School Board directed that prayers be said at the commencement exercises. The program was to include "an audible invocation and benediction".[1] The stipulation of

---

[1] The relevant excerpt from the minutes of the meeting of the school directors is as follows: "Dr. Green requested that the Board consider the recommendations transmitted to him from the High School Commencement Program Committee. He then presented the program. It was moved by Sherman and seconded by Thomas to accept the program as presented. After comments were heard from Township residents, students, clergy and Board members, it was moved by Thomas and seconded by Dougherty to amend the proposed commencement program to include an audible invocation and benediction. The amendment was unanimously approved by roll call vote. A roll call vote was then taken on the motion, as amended, and was unanimously approved." (Appellant's Brief at 20a.) We

facts makes clear, moreover, that one or the other or both of these utterances would be delivered by a clergyman. An invocation is an invocatory prayer or plea, addressed to a divine being, or, more specifically, "a prayer, often a prescribed prayer, offered at the beginning of a service, a part of such, or a sermon". Webster's New International Dictionary, 2d Ed. (1942). Another dictionary states that an invocation is "a form of prayer invoking God's presence, said especially at the beginning of a public ceremony". Random House Dictionary of the English Language (1966). A benediction also is another word for prayer, specifically, "The short prayer or blessing, pronounced by a minister or priest, with which public worship is closed". Webster, *supra*. While it is true that the precise words to be used could not be known at the time this litigation was commenced, it cannot be assumed that they would be other than religious in nature, especially since a clergyman would deliver them. As Dr. Buttrick has concisely put it, "prayer is the heart of religion";[2] in the words of William James, it is "the very soul and essence of religion".[3] It is the act of prayer, not the words themselves, that is the basis of the present complaint.[4] The problem, therefore, is to determine whether these prayers, mandated by the School District to be said at an important school function conducted on

have not been informed of the nature of the comments referred to in the quoted minutes.

[2] G. Buttrick, Prayer, 16 (1941).

[3] W. James, The Varieties of Religious Experience, 352 (Mentor Book Ed., 1958). James goes on to say that "Prayer is religion in act; that is, prayer is real religion. It is prayer that distinguishes the religious phenomenon from such similar or neighboring phenomena as purely moral or aesthetic sentiment." *Ibid.*

[4] The approach taken in the concurring opinion of Mr. Justice ROBERTS seems to me quite untenable; it would mean that the saying of a prayer could never be enjoined unless one had an advance copy of the text, which as a practical matter would never occur.

school property, are in violation of the Establishment Clause of the First Amendment, which prohibits any "law respecting an establishment of religion".[5]

In *Schempp*, as is well known, the Supreme Court struck down as violative of the First and Fourteenth Amendments a 1959 statute of Pennsylvania which required that "At least ten verses from the Holy Bible shall be read, without comment, at the opening of each public school on each school day. Any child shall be excused from such Bible reading, or attending such Bible reading, upon the written request of his parent or guardian.". In the consolidated companion case from Maryland decided at the same time (*Murray v. Curlett*), the Court held invalid a "rule", authorized by Maryland law, which provided for "reading, without comment, of a chapter in the Holy Bible and/or the use of The Lord's Prayer". In so doing, the Court in *Schempp* relied, *inter alia*, on the only other major holding of the Court, either then or now, dealing directly with school prayers, *Engel v. Vitale*, 370 U.S. 421, 8 L.Ed.2d 601 (1962).[6] In that case, the Court held that the prayer ordained by the New York State Board of Regents violated the Establishment Clause. The prayer

---

[5] I agree with the Court that the voluntary nature of the commencement exercises serves to eliminate any claim that the Free Exercise Clause of the First Amendment was violated.

[6] There have been, of course, a number of other Establishment Clause decisions by the Supreme Court involving the relationship between religion and education. For citations, see notes 29 and 30 to Mr. Justice POWELL's opinion for the Court in *Committee for Public Education and Religious Liberty v. Nyquist*, 413 U.S. 756, 37 L.Ed.2d 948 (1973). While the opinions in these cases are relevant in any discussion of a problem such as is here presented, they cannot be said to be controlling on the issue before us, and space does not allow discussion of them. *See*, in general, J. Choper, Religion in the Public Schools: A Proposed Constitutional Standard, 47 Minn. L. Rev. 329, 408 (1963); K. Hodges, Comment, Religious Exercises and the Public Schools, 20 Ark. Law Rev. 320, 352 (1967).

was as follows: "Almighty God, we acknowledge our dependence upon Thee, and we beg Thy blessings upon us, our parents, our teachers and our Country". It is difficult to say that the invocation and benediction here involved would be any less prayers because they do not rise to the nobility or sanctity of The Lord's Prayer, or, on the other hand, because they might be, like the New York Regents' Prayer, "a pathetically vacuous assertion of piety". L. Pollak, Public Prayers in Public Schools, 77 Harv. L. Rev. 62, 63 (1963). If the prayers here are to be distinguished from those in *Schempp* and *Vitale*, I think the difference must lie in the settings involved.

In *Schempp*, as the Court found, 374 U.S. at 223, the proscribed exercises of Bible reading and recitation of The Lord's Prayer were part of the curricular activities of students who were required by law to attend school. They were held in the school building under the supervision and with the participation of teachers employed in those schools. The Court found (as had the trial court also in the Pennsylvania case), that the opening exercise was "a religious ceremony". In *Vitale*, the Regents' prayer was ordered to be said aloud by each class in the presence of a teacher at the beginning of each school day. If Mt. Lebanon had ordained that each school day, or a particular convocation each day, were to be opened with an invocation and closed with a benediction, the conclusion would be inescapable that they were constitutionally proscribed. In contrast, however, the graduation exercises at Mt. Lebanon take place but once a year, are attended primarily by senior class members, their families and friends, and are not part of the school curriculum or normal routine of the school. While School Boards are legally required to issue diplomas to qualifying students, the commencement session is not a required method for so doing; all required sessions and studies have been previously com-

pleted, and diplomas can be otherwise obtained. The prayers, moreover, are not to be spoken by the audience, as they were by the students in *Schempp* and *Vitale*. If what occurred in *Vitale* and *Schempp* were "random tidbits of religious activity", *see* Pollack, op. cit., *supra*, at 75, the relatively isolated and abbreviated Mt. Lebanon activity shrinks almost to a *de minimis* stature.

The Supreme Court in *Schempp* stated that "to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion". *Abington School District v. Schempp, supra,* 374 U.S. at 222.[7] I agree with Chief Justice JONES that the stipulated facts which form the record before us are totally unenlightening as to either the purpose or the primary effect of the prayer requirement that the appellee School Board ordained.[8] While the challenged activity may lie in the penumbra of the constitutional command, I do not think we can declare as a matter of law, on this scanty record, that there is a *per se* violation. As Mr. Justice FRANKFURTER has well stated, "It is the Court's duty to enforce this principle [separation of Church

---

[7] In *Committee for Public Education and Religious Liberty v. Nyquist*, 413 U.S. 756, 37 L.Ed.2d 948 (1973), a case involving state financial aid to non-public schools, Mr. Justice POWELL noted a third part to these guidelines, *viz.*, that the legislative provision in question "must avoid excessive governmental entanglement with religion". 413 U.S. at 773, 37 L.Ed. at 963. *See also Tilton v. Richardson*, 403 U.S. 672, 29 L.Ed.2d 790 (1971).

[8] The School Board asserts, dehors the record, that the invocation and benediction "are to serve secular purposes by providing 'an air of dignity' to the occasion, and developing a 'serious and solemn atmosphere'" for it. (Appellee's Brief, p. 10.) To many, this relegation of prayer to a meaningless ritual will seem a shabby purpose indeed, quite incompatible with communion with a Supreme Being. Contrast the motivation for corporate prayer on public occasions as advocated by George A. Buttrick in *Prayer*, op. cit., *supra*, n.2, at 277.

and State] in its full integrity", but it is also true, as Justice FRANKFURTER acknowledged in the same opinion, that we are not here dealing with a principle "having the definiteness of a surveyor's metes and bounds". *Illinois ex rel. McCollum,* 333 U.S. 203, at 231 and 217, 92 L.Ed. 649 (1948). (FRANKFURTER, J., concurring.) Until we are presented with a clearer demonstration of non-secular purpose or of an effect which advances religion, or until the Supreme Court has occasion to delineate further the sweep of *Engel* and *Schempp,* I am satisfied that this Court would not be warranted in enjoining the activity here involved. This is not because that activity may not be religious in nature, and not because it may be a vapid ritualistic exercise to promote "dignity" and solemnity, but because even though religious and perhaps intended so to be, it is too remote from the classroom or any required educational program to be constitutionally impermissible; in its total setting, the activity does not do violence to the principle of neutrality by the government in church-state relationships.