542 A.2d 1380

**COATESVILLE DEVELOPMENT COMPANY and Giant Food Stores, Inc., Appellants,**

**v.**

**UNITED FOOD AND COMMERCIAL WORKERS, AFL–CIO; United Food and Commercial Workers, Local 1357, AFL–CIO and United Food and Commercial Workers, Local 56, AFL–CIO.**

Superior Court of Pennsylvania.

Argued June 8, 1987.

Filed May 19, 1988.

---

332

Eric Hemmendinger, West Chester, for appellants.

N. Michael Katz, Philadelphia, for United Food, Local 1357, appellee.

Miriam L. Gafni, Philadelphia, for United Food, Local 56, appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA and JOHNSON, JJ.

ROWLEY, Judge:

This is an appeal from an order denying appellants', Coatesville Development Company and Giant Food Stores, petition for a preliminary injunction against appellees, two locals of the United Food and Commercial Workers Union. We affirm.

On August 28, 1984, appellant Giant Food Stores, Inc. (Giant) opened a new supermarket at Thorndale Shopping Center which shopping center is owned[1] by Coatesville Development Company (Coatesville). The Thorndale Shopping Center consists of several stores in addition to Giant and a large parking area, and it is immediately adjacent to another shopping center which includes a competitor of Giant. The same day that the store opened, appellees were engaged in a labor dispute with Giant and began picketing and distributing handbills in front of the store as well as in the parking lot of the shopping center. The appellees charged that Giant paid substandard wages to its employees and discouraged public patronage of the store. The Union was not attempting to organize Giant's employees and none of the pickets was employed by Giant.

Coatesville has no policy limiting or restricting the purposes for which a person is invited onto the mall premises.

---

1. Technically, Coatesville Development Company does not have full legal and equitable title to the shopping center. Coatesville has entered into a land installment sales agreement to purchase the shopping center, and as a result of that agreement, it has equitable title to the shopping center.

Giant has a policy prohibiting unauthorized solicitation by non-employees on its premises and prohibiting employees from soliciting during working time on both the company's property as well as in the common areas of the shopping center. This policy is made known to the public by a sign which is posted inside the store's vestibule. The sign reads:

UNAUTHORIZED SOLICITATION FOR ANY PURPOSE OR THE DISTRIBUTION OF LITERATURE OF ANY KIND BY NON–EMPLOYEES ON COMPANY PREMISES IS NOT PERMITTED.

EMPLOYEES ARE NOT PERMITTED TO SOLICIT OR DISTRIBUTE LITERATURE DURING WORKING TIME IN WORKING AND PUBLIC AREAS.

The sign is not visible to one driving past the store in an automobile, and there is no positive evidence in the record that the sign is visible by pedestrians in the parking lot or on the sidewalk outside the store.

The day after the picketing began, Giant obtained a temporary *ex parte* injunction permitting the pickets, but limiting their number and their location at specific places on the sidewalk and in the parking areas of the mall. Five days later, Giant and the Union consented to the entry of an injunction on terms similar to the *ex parte* injunction, and the trial court made the consensual injunction an order of court. However, both the Union and Giant expressly reserved the right to assert and challenge, respectively, the Union's legal right to picket on the mall property.

Almost three months after the *ex parte* injunction was obtained, Coatesville filed a separate complaint in equity against the Union seeking a temporary and permanent injunction against all picketing on its property by the Union. Despite Giant's consent to the earlier limited injunction in its separate action, Giant, along with Coatesville, filed an amended complaint in Coatesville's equity action naming both Coatesville and Giant as plaintiffs in the action. One of the paragraphs in the complaint stated that all the proceedings in Giant's separate action in which it had consented to the preliminary injunction were incorporated by

reference. In its answer to the amended complaint, the Union denied that anything from Giant's separate action against the Union was incorporated or that the two actions had been properly joined. Also, in response to the amended complaint the Union filed unfair labor charges against appellants. The National Labor Relations Board dismissed the charges on the basis that the Union had failed to show that appellants' action was frivolous or lacking a reasonable basis in fact or in law, or that the action was retaliatory. Thus, it did not constitute an unfair labor practice.

In December, 1984, a hearing was held in the Coatesville/Giant action on the issue of whether the trial court should grant the requested preliminary injunction and permit the Union to picket on appellants' property. The trial court determined that while peaceful picketing on private property is not protected by the First Amendment of the United States Constitution, it is protected by Art. 1, § 7 [2] of the Pennsylvania Constitution.

In reaching its conclusion, the trial court relied on *Commonwealth v. Tate*, 495 Pa. 158, 432 A.2d 1382 (1981), in which our Supreme Court held that the Pennsylvania Constitution affords more expansive protection of free speech than the federal constitution. *Tate* further established a test which balances the right to possess and use property against the right of free expression. Applying this test to the instant action, the trial court held that it was a reasonable exercise of police power to permit peaceful picketing

2. Article 1 § 7 of the Pennsylvania Constitution provides:
   The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

by the Union on appellants' property particularly since it determined that the Union's alternatives were wholly inadequate. Thus although the trial court found that the Pennsylvania Constitution protected the Union's right to picket, it found it unnecessary to grant the preliminary injunction because the existing injunction granted in Giant's separate action against the Union and which was agreed to by Giant and the Union but not Coatesville, was an appropriate accommodation of the parties' constitutionally protected rights. For these reasons the trial court denied the petition for a preliminary injunction in the present case.

Coatesville and Giant appealed from the order denying the preliminary injunction claiming that the trial court erred in holding that the Union's right to picket and distribute handbills on private property was constitutionally protected. A panel of this Court reversed the trial court's order by holding that the Union did not have a right under the Pennsylvania Constitution to picket on the private property of Coatesville and Giant.

Reargument before the court en banc was granted, and the parties were given permission to file supplemental briefs addressing the impact of the recent decision of the Pennsylvania Supreme Court in *Western Pennsylvania Socialist Workers v. Connecticut General Life Insurance Co.*, 512 Pa. 33, 515 A.2d 1331 (1986). The trial court had addressed the Superior Court's disposition of *Socialist Workers*, 335 Pa.Super. 493, 485 A.2d 1 (1984), which had held that a privately owned shopping center was purely private and, therefore, the state constitution did not restrict the owner's right to prohibit political activity on its property. However, the trial court found that the Superior Court had relied on a line of cases rejected by the majority in *Tate* and that it had misconstrued *Tate*.

■ Despite the emphasis on the constitutional rights of the parties in the trial court's opinion, the panel's disposition, and the parties' briefs, we find it unnecessary to reach the constitutional issue of whether Article 1 § 7 of the Pennsylvania Constitution protects the right of union mem-

bers engaged in a labor dispute with a store to picket and distribute, on the private property of a shopping center, including the parking lot and sidewalks of the shopping center, handbills announcing that the store does not comply with area-standards with regard to its treatment of employees. We can determine whether the trial court's order denying the preliminary injunction was an abuse of discretion by applying principles of the common law. Where an issue can be resolved on a basis other than constitutional law, the court should not address the constitutional question. *Ballou v. State Ethics Commission,* 496 Pa. 127, 436 A.2d 186 (1981). We therefore will not address the constitutional issue.

■ Before discussing the merits of the case we note that despite the cessation of Union picketing at Giant's store at the Thorndale Shopping Center in April, 1985, the present case involves an exception to the strict application of the doctrine of mootness. The Union is still picketing at other Giant stores, and because the Union can stop picketing at any time, it is quite possible that the issue involved here would not reach the appellate courts before the Union would stop picketing. Therefore, this case presents an important issue which is likely to escape review. Consequently, we will not apply the doctrine of mootness, but will reach the merits of the case. See *Western Pennsylvania Socialist Workers v. Connecticut General Like Insurance Company,* 512 Pa. 23, 515 A.2d 1331 (1986); *Wiest v. Mt. Lebanon School District,* 457 Pa. 166, 320 A.2d 362, *cert. denied,* 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974).

■ The standard of review of an order denying or granting a preliminary injunction is well established.

As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was

misapplied will we interfere with the decision of the Chancellor. *Intraworld Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316 (1975); *Credit Alliance Corporation v. Philadelphia Minit–Man Car Wash Corp.,* 450 Pa. 367, 301 A.2d 816 (1973); *Zebra v. Pittsburgh School District,* 449 Pa. 432, 296 A.2d 748 (1972). "In order to sustain a preliminary injunction, *the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted."* *Zebra v. Pittsburgh School District,* 449 Pa. at 437, 296 A.2d at 750 (emphasis added). *Roberts v. School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975) (emphasis added).

*Willman v. Children's Hospital of Pittsburgh,* 505 Pa. 263, 269, 479 A.2d 452, 454–455 (1984). We can affirm the decision of a trial court on any basis even if the reasons given by the trial court for its decision are incorrect. *Commonwealth v. Allem,* 367 Pa.Super. 173, 532 A.2d 845 (1987). Applying this limited scope of review, we affirm.

■ Grounds for the trial court's order denying a preliminary injunction in this case exist. Most importantly, it was proper not to grant an injunction in this case because neither Coatesville nor Giant took adequate measures to prohibit the activities of the Union. The property involved here, a shopping center, undeniably was open to the public for the public to come onto the property despite the fact that it was privately owned. Coatesville placed no limitations whatsoever on the conduct which could be engaged in upon that property. While Giant attempted to limit the scope of activities on its property, the extent of those limitations is not clear.

Giant's posted notice concerning non-solicitation and distribution of handbills was located only inside the store and was not visible from outside the store. Yet the activity to which Coatesville and Giant object, is activity conducted outside the store. For Giant's efforts to prohibit the picketing and handbilling engaged in on the parking lot and on the sidewalk to be effective, its prohibition must be clear

and unambiguous, and it must state unequivocally the nature of the conduct prohibited and the location to which the prohibition extends. Furthermore, Giant's prohibition on the particular activity must exist prior to the commencement of the activity and cannot be imposed ex post facto.

Giant's alleged no-solicitation policy satisfied none of these requirements. The notice which was posted did not unequivocally state that picketing could not be conducted on the property. The words on the sign posted inside the store stated only that there could be no solicitation and no distribution of handbills. It did not prohibit people wearing or carrying placards from walking and standing on the property. Therefore, at least some of the activities of the Union were not expressly prohibited.

Giant's notice also did not unambiguously indicate the geographic parameters of its no-solicitation rule. As to non-employees, the sign simply stated that solicitation and distribution were prohibited "on company property." The public, which is not privy to the precise language included in Giant's lease with Coatesville, would have no idea precisely what constituted "company property," and the public certainly could not be expected to understand "company property" to relate to common areas of the shopping center including the parking lot and sidewalks, even if the agreement between Coatesville and Giant provided that such areas were to be considered Giant's company property. Furthermore, the sign setting forth the prohibition was located inside the store and could not be seen from outside the store. Thus, at the time that the Union began to picket on the sidewalks and in the parking lot, neither Giant nor Coatesville can be said to have taken measures to unambiguously and specifically have prohibited the activity of the Union nor taken measures to ensure that the Union, picketing outside the store only, would have known about the policy.

This case is factually distinguishable from *Socialist Workers*, where a plurality of the Supreme Court upheld a trial court's refusal to enjoin the owners of a shopping mall

from enforcing their non-solicitation policy. Although we do not have the benefit of all the information concerning the shopping mall's non-solicitation rule in *Socialist Workers,* what we do know about it distinguishes it from the present case. In *Socialist Workers,* the shopping mall required a permit to solicit in the common areas. When the political organizers applied for a permit, it was denied because the mall had a uniform policy denying all political solicitation on its property. In the present case, there was no general permit requirement for solicitation, and there was nothing to indicate a clear and unambiguous, uniformly applicable policy as in *Socialist Workers.* We therefore, do not find the ultimate result in *Socialist Workers* to be applicable here.

■ Neither the right of the Union to picket nor the right of the Coatesville and Giant to limit the conduct permitted on its private property is absolute. However, in the absence of any unambiguous and meaningful prohibition on the use of the shopping center property, we cannot conclude that under the common law the trial court erred in allowing the union to continue its activities on the property until the rights of the parties were finally determined. We hold that the trial court properly denied the preliminary injunction in this case because where a private property owner holds his property open for public use and invites the public onto the property, the property owner is not entitled to an injunction against peaceful informational picketing directed at the conduct of one of the possessors of the property or a tenant on the property in the absence of an established policy specifically and unambiguously prohibiting such picketing on the property in the specific location where the picketing is being conducted and in the absence of a publication of the policy prohibiting such activity where those conducting the prohibited activity can reasonably be expected to be aware of the publication of the policy.

Furthermore, we note that the injunction which was denied here was only a preliminary one and not a permanent one. The rights of the parties to the use of this property

has not yet been finally determined. Moreover, the trial court was aware that a limited preliminary injunction had already been obtained. In light of our limited scope of review and the fact that the record supports the trial court's decision, we affirm the trial court's order denying the preliminary injunction.

Order affirmed.

BECK, J., files a concurring opinion.

TAMILIA, J., files a concurring and dissenting opinion.

BECK, Judge, concurring:

I agree with the majority that the trial court did not abuse its discretion by denying appellants' request for a preliminary injunction against all union picketing at the Thorndale Shopping Center. A preliminary injunction is a special equitable remedy which need not be granted in every case which involves a continuing trespass on private property.

In *Wilkes–Barre Independent Company v. Newspaper Guild, Local 120,* 455 Pa. 287, 314 A.2d 251 (1974), labor union pickets blocked two of the ten entrances to the employer's plant. The employer sought a preliminary injunction, the trial court denied relief, and the employer appealed. Although the Pennsylvania Supreme Court concluded that the union had seized the employer's private property, the denial of a preliminary injunction was affirmed. The Court noted that since the union had not prevented the employer from gaining access to his plant, the trial judge had been correct in finding that there were no imperative circumstances requiring injunctive relief.

In the instant case, appellant Giant obtained an initial injunction limiting the number of picketers. The union agreed to abide by the terms of this order. Appellants then sought a broader preliminary injunction which would wholly exclude union picketers from the parking lot in front of the Giant Super Market. The trial judge denied this request,

but noted that if the picketers obstructed the store entrance or harassed shoppers, he would hear argument on whether to hold the union in contempt for violating the existing injunction. Under these circumstances, the trial court did not abuse his discretion by allowing union picketing to continue. As in the *Wilkes–Barre Independent Company* case, appellants' need for immediate relief from interference with their property is not so compelling as to justify appellate court intervention at this stage of the proceedings.

Apart from the narrow question of our standard of review of the denial of a preliminary injunction, a few general comments about private property and free speech are in order. Few would deny that owners of private property have important rights which merit legal protection. However, in the case of land owned by business enterprises which invite the patronage of the public, there are competing interests which deserve to be taken into account. The walkways and parking lots that surround commercial establishments are not essentially *private*—at least in the same sense that residences, or offices, or the interiors of discrete stores are private. These outdoor areas often closely resemble the public streets and squares that have been used throughout the history of our country as a forum for the citizenry. *See Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 90, 100 S.Ct. 2035, 2045, 64 L.Ed.2d 741 (1980) (Marshall, J., concurring). Indeed, in many regions, developers and promoters have succeeded in turning a shopping complex into the principal center of community activity. Thus, a general ban on picketing at the outskirts of a shopping complex significantly restricts the means by which members of the community can convey ideas and exchange information.

This does not mean that unions should have as much a right to demonstrate outside a shopping center as in a city park. My point is rather that the legal system ought to accommodate the interests of all of the parties who are affected by shopping center picketing. The interests to

which I refer are: 1) the property owners' interest in controlling their land; 2) the store owners' interest in running their businesses without substantial disruption; 3) the labor union's interest in speaking out in order to promote the welfare of its members (and more generally, the interest of individuals in having a forum in which to comment on matters of public concern); and 4) the public's interest in gaining ready access to information which will allow shoppers to make an informed decision concerning which stores they wish to patronize. In order for justice to be done, courts must develop a legal framework for balancing these factors. There are at least three potential sources for such a framework: the constitution, the common law, and the statutory law of this Commonwealth.

Appellants argue that in *Western Pennsylvania Socialist Workers v. Connecticut General Life Insurance Company*, 512 Pa. 23, 515 A.2d 1331 (1986), the Pennsylvania Supreme Court conclusively determined that there is neither a constitutional right nor a common law right to picket on private property. We need not reach this issue. However, even assuming that appellants are correct, nothing would prevent the General Assembly from explicitly authorizing reasonable public use of outdoor commercial property for communicative activity. The state legislature has broad authority to regulate the use of private property in the public interest. *See Western Pennsylvania Socialist Workers*, 512 Pa. at 37, 515 A.2d at 1339 (plurality opinion). This regulation may include imposing limitations on a landowner's right to exclude trespassers—so long as the regulation does not so thoroughly deny a landowner the use of his land as to constitute a taking of property without just compensation. *See Pruneyard Shopping Center, supra* (rejecting federal constitutional challenge to California Supreme Court decision preventing shopping mall owner from banning political solicitation on his property).

Of the features which distinguish this society from others, few are of more importance than the extraordinary value which we as a people attach to freedom of expression.

Apart from any affirmative rights which appellees may have to picket, the Commonwealth itself has an interest in ensuring that appellees have a fair opportunity to communicate their message. The General Assembly should advance this interest by passing appropriate legislation.[1]

I agree that the trial court order should be affirmed.

TAMILIA, Judge, concurring and dissenting:

While I concur in the result propounded by the majority, I respectfully dissent to the conclusion reached by the majority that the case does not implicate constitutional rights to picket but may be resolved by applying common law principles.

The entire thrust of the holding of the majority is to the effect that in a mall or industrial district, a combination of business and economic interests may consolidate in a consortium to control the area by instituting an area-wide policy in advance, with very specific prohibitions and restrictions against Union activities such as picketing, and thereby successfully prevent job actions of any kind by a Union. It is conceivable in a mall or an industrial park that such a grouping could involve thousands of employees, very large businesses and economic interests, which in effect would be circumscribed in such a way that employees could not effectively deal with grievances except by patrolling the perimeters of such an area. In such a case, a perimeter patrol might be more violative of public interests, subject to prohibition because of interference with traffic and persons having no relationship to the economic interests under protest and thereby would be subject to injunctive relief.

Under the majority's reasoning, with prohibitions enacted by the property owner as to the private property surround-

1. As a first step, the legislature could amend Pennsylvania's Labor Anti-injunction Act so as to authorize trial courts to take free speech concerns into account when deciding whether to issue an order restraining union picketing. The current Act does not explicitly protect peaceful communicative activity by unions on private property. *See* Pa.Stat.Ann.tit. 43 § 206a-r (Purdon 1964).

ing a business, a Union could be prevented from going upon that property to make a legitimate protest. This would have the effect of turning back legislation, concerning work-related grievances, developed over the last fifty years, which I believe has protection of the Pennsylvania Constitution. For this reason I respectfully believe, in avoiding the constitutional issue the majority holding in resolving the matter on common law principles, sends a message that can radically alter the rights of Unions in this Commonwealth.

As stated by the appellees:

When the General Assembly passed the Labor Anti-Injunction Act in 1937, Act of June 2, 1937, P.L. 1198, § 1, 43 Pa.Stat. § 206a, *et seq.*, the legislators were particularly concerned with the power of property owners aided by governmental authority for corporate ownership to overpower workers in their rights to organize and protect conditions of employment. 43 Pa.Stat. § 206b(a). Consequently, whenever a legitimate labor dispute arose, they established an absolute prohibition on the power of courts to enter an injunction limiting that protection of those employee rights, except on certain specific terms and conditions. 43 Pa.Stat. § 206c(a), (b), (c); § 206f(e), (g), (j), (m).

Appellees' supplemental brief at 10. Thus a public policy has been created by the General Assembly supporting the rights of Unions to picket in cases such as this and it will not depend upon whether or not Coatesville and Giant did or did not establish standards and procedures upon which persons could or could not picket. Appellees correctly allege it would have been incumbent upon Coatesville and Giant, had they promulgated such standards, to establish there were alternative means which would be effective to communicate the message founded by the Unions in order for injunctive relief to be granted, as this is not a political action subject to *Commonwealth v. Tate*, 495 Pa. 158, 432 A.2d 1382 (1981) and *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Ins.*

*Co.,* 512 Pa. 23, 515 A.2d 1331 (1986) but an economic one with totally different considerations.

In this case, the only effective means of conveying a message to Giant and the people patronizing Giant was at the location of Giant. To place them on the periphery or in any other area of the mall would have been totally ineffective and probably disruptive of the activities of innocent business interests and the public. Although *Tate, supra,* was a political action and this one is economic, the balancing test espoused by *Tate* would be applicable to such a determination, *Tate* relying on tests espoused by the United States Supreme Court in *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) which said:

> It is, of course, well established that a State in the exercise of its police power may adopt reasonable restrictions on private property so long as the restrictions do not amount to a taking without just compensation or contravene any other federal constitutional provision.

*Id.* at 81, 100 S.Ct. at 2040, 64 L.Ed.2d at 752.

Again, I agree with appellees and the trial court who suggest that Unions have a constitutional right, both under the Federal and State Constitutions to engage in peaceful picketing to communicate their grievances. In *N.L.R.B. v. Babcock & Wilcox Co.,* 351 U.S. 105, 112–13, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1955); *Warren v. Motion Picture Machine Operators,* 383 Pa. 312, 317, 118 A.2d 168 (1955). The majority correctly points out that despite cessation of picketing by the Union, the question raised by this case is not moot as similar picketing is ongoing throughout the Commonwealth. Unquestionably, the constitutionality of such picketing will be an issue in those instances where the property owner had the foresight to limit picketing as suggested by the majority. That right is specifically protected by the Labor Anti-Injunction Act, *supra,* and the decision of the trial court denying the preliminary injunction requested by Giant and Coatesville in this case, therefore, must be affirmed.