Henry HALLER, Felice Newman, and Steve Zupcic, individuals, Petitioners

v.

The COMMONWEALTH of Pennsylvania, Department of Revenue, and Eileen McNulty, Secretary of the Department of Revenue, in her official capacity, Respondents

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1995.
Decided May 1, 1997.

---

David J. Millstein, Greensburg, for petitioners.

Fredrick Cabell, Jr., Deputy Attorney General, Harrisburg, for respondents.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, KELLEY, and NEWMAN, JJ.

KELLEY, Judge.[1]

Presently before this court for disposition are the cross-motions for summary judgment filed by Felice Newman and Steve Zupcic (petitioners)[2] and the Pennsylvania Department of Revenue (department)[3] to the petition for review filed in our original jurisdiction by the petitioners. The petition for review raised a constitutional challenge to the department's enforcement of the sales tax exemption for the sale of religious articles, Bibles and other religious publications sold by religious organizations provided by section 204(28) of the Tax Reform Code of 1971 (Tax Code)[4] and section 31.3(22) of Title 61 of the Pennsylvania Code (tax regulations)[5,6]. Because we find that the foregoing tax exemptions violate both the United States and Pennsylvania Constitutions, the petitioners' motion for summary judgment is granted and the department's motion for summary judgment is denied.

The relevant facts of this case, as stipulated by the parties, are as follows. Newman owns and operates a publishing company, known as Cleis Press, located in Pittsburgh, Pennsylvania; none of the books published by Cleis Press are exempt from the foregoing sales tax. (Stipulation of Facts, Para. 6). During 1993, Zupcic purchased books of both a religious and non-religious nature from various stores in Pittsburgh. "Zupcic was not required to pay sales tax on the purchase of a [B]ible but was required to pay sales tax on other publications, both religious and nonreligious, which were not published by a religious organization." (Stipulation of Facts, Para. 8). In addition, it was stipulated that the department "[h]as interpreted the term Bible as used in [section 204(28) of the Tax Code] in such a manner as to include the sacred texts of all religious groups, including such books as the Koran and the Book of Mormon." (Stipulation of Facts, Para. 9). The parties further stipulated that the department "[h]as not discriminated against any religious groups in its enforcement of

---

1. This matter was reassigned to the author on December 10, 1996.

2. Originally, Henry Haller was also a plaintiff in this case. However, he was subsequently dismissed as a party by this court based upon preliminary objections to the petition for review filed by the department and its Secretary, Eileen McNulty. *See* n. 3 *infra*.

3. Eileen McNulty, the Secretary of the Department of Revenue at the time petitioners filed the petition for review, was also named as a defendant in her official capacity. We note that Robert A. Judge, Sr. has replaced McNulty as Secretary since the commencement of this action. *See* The Pennsylvania Manual, Vol. 112 (December 1995).

4. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7204(28). Section 204(28) reads as follows:

> The tax imposed by section 202 shall not be imposed upon
>
> * * *
>
> (28) The sale at retail or use of religious publications sold by religious groups and Bibles and religious articles.

5. 61 Pa.Code § 31.3(22). Section 31.3(22) reads as follows:

> The tax does not apply to the following:
>
> * * *
>
> (22) Religious publications sold by religious groups. Sales or use of bibles and religious articles are exempt.

6. The regulations contained at 61 Pa.Code § 31.3 were promulgated by the Department of Revenue pursuant to the authority granted to it by the General Assembly under section 270 of the Tax Code, 72 P.S. § 7270.

[the exemption under section 204(28) of the Tax Code]." (Stipulation of Facts, Para. 10).

We initially note that a motion for summary judgment may be properly granted only in those cases where: (1) there is no outstanding issue of material fact; (2) the moving party's right to prevail is free from any doubt; and (3) the moving party is entitled to judgment as a matter of law. *Johnston v. Lehman,* 168 Pa.Cmwlth. 245, 649 A.2d 730 (1994). Because the parties have stipulated to all material facts in this case, the only issues which need to be addressed are the legal issues concerning the constitutionality of the tax exemption for the sale of religious publications under section 204(28) of the Tax Code and section 31.3(22) of the tax regulations.

The petitioners first claim that they are entitled to judgment as a matter of law because the tax exemptions violate the Establishment Clause of the First Amendment to the United States Constitution, and Article 1, Section 3 of the Pennsylvania Constitution.[7] The First Amendment states, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." U.S. Const. amend. I.

Regarding the purpose underlying the adoption of the Establishment Clause, the Supreme Court has noted that:

Our history vividly illustrates that one of the specific evils feared by those who drafted the Establishment Clause and fought for its adoption was that the taxing and spending power would be used to favor one religion over another or to support religion in general. James Madison, who is generally recognized as the leading architect of the religion clauses of the First Amendment, observed ... that "the same authority which can force a citizen to contribute three pence only of his property for the support of any one establishment, may force him to conform to any other establishment in all cases whatsoever." ... The concern of Madison and his supporters was quite clearly that religious liberty ultimately would be the victim if government could employ its taxing and spending powers to aid one religion over another or to aid religion in general. The Establishment Clause was designed as a specific bulwark against such potential abuses of governmental power, and that clause of the First Amendment operates as a specific constitutional limitation upon the exercise by Congress of [its] taxing and spending power....

7. Article 1, Section 3 of the Pennsylvania Constitution reads as follows:

All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

Pa. Const. art. 1, § 3.

Regarding the protections afforded by this provision, the Pennsylvania Supreme Court has noted that:

The principles enunciated in this part of our Constitution reflected a concern for the protection of the religious freedoms of Pennsylvanians long before the first amendment to the United States Constitution was made applicable to the states through the fourteenth amendment. Provisions identical to the above section were contained in the Constitutions of 1790 and 1838 and a similar provision was contained in the Constitution of 1776.... The protection of rights and freedoms secured by

this section of our Constitution, however, does not transcend the protection of the first amendment of the United States Constitution. *Wiest v. Mt. Lebanon School District,* 457 Pa. 166, 174, 320 A.2d 362, 366–67 (1974). As a result, the analysis petitioners' claim under the first amendment to the United States Constitution is "equally apposite" to their claim raised under article 1, section 3 of the Pennsylvania Constitution. *Id.,* 457 Pa. at 174, 320 A.2d at 367. *See also Springfield School District v. Department of Education,* 483 Pa. 539, 397 A.2d 1154 (1979) (quoting *Wiest*). *Cf. Fischer v. Department of Public Welfare,* 66 Pa.Cmwlth. 70, 444 A.2d 774, 780–81 (1982) (Craig, J., Opinion in Support of Overruling Preliminary Objections) ("[T]he decisions of the appellate courts of this Commonwealth contain numerous examples of the general proposition that the Pennsylvania Constitution may afford greater protections than that of its federal counterpart ... [i]n view of the fact that the present [challenge] is also grounded upon [Article 1, Section 3 of] the Pennsylvania Constitution [the decision of the United States Supreme Court with respect to the same legislative enactment] is not controlling precedent ....") (citations omitted).

*Flast v. Cohen,* 392 U.S. 83, 103–04, 88 S.Ct. 1942, 1954–55, 20 L.Ed.2d 947 (1968) (citations and footnotes omitted).

In support of their claim that the tax exemptions are unconstitutional, the petitioners principally rely on the Supreme Court's opinion in *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). In that case, the Supreme Court considered whether a similar tax exemption for the sale of religious publications by religious organizations enacted by the Texas Legislature violated the Establishment Clause. The statute in question, Tex.Tax Code § 151.312 (1982), exempted from taxation "[p]eriodicals that are published or distributed by a religious faith and that consist wholly of writings promulgating the teaching of the faith and books that consist wholly of writings sacred to a religious faith." *Texas Monthly, Inc.,* 489 U.S. at 5, 109 S.Ct. at 894.

Writing for a plurality Court, Justice Brennan noted that:

> In proscribing all laws "respecting an establishment of religion," the Constitution prohibits, at the very least, legislation that constitutes an endorsement of one or another set of religious beliefs or of religion generally. It is part of our settled jurisprudence that "the Establishment Clause prohibits government from abandoning secular purposes in order to put an imprimatur on one religion, or on religion as such, or to favor the adherents of any sect or religious organization." ... The core notion animating the requirement that a statute possess "a secular legislative purpose" and that "its principal or primary effect ... be one that neither advances nor inhibits religion," ... is not only that government may not be overtly hostile to religion but also that it may not place its prestige, coercive authority, or resources behind a single religious faith or behind religious belief in general, compelling nonadherents to support the practices or proselytizing of favored religious organizations and conveying the message that those who do not contribute gladly are less than full members of the community.

*Id.* at 8–9, 109 S.Ct. at 896 (Brennan, J., plurality) (citations and footnote omitted).

However, Justice Brennan noted that government policies with secular objectives which may incidentally benefit religion are not violative of the First Amendment prohibition. *Id.* at 10, 109 S.Ct. at 897. Rather, the First Amendment is offended only where the benefits of governmental policies flow solely to aid religion, thereby creating the appearance of state sponsorship of religion. *Id.* at 11, 109 S.Ct. at 897–98.

In defense of the sales tax exemption for religious publications, Texas argued that without such an exemption, its sales tax might violate the Free Exercise Clause of the First Amendment. *Id.* at 17, 109 S.Ct. at 900–01. In addition, Texas argued that the sales tax exemption neither advanced nor inhibited religion, as required by the Establishment Clause, and its elimination would entangle church and state to a greater degree than the exemption itself. *Id.*

However, as the plurality opinion stated:

> We reject both parts of this argument. Although Texas may widen its exemption consonant with some legitimate secular purpose, nothing in our decisions under the Free Exercise Clause prevents the State from eliminating altogether its exemption for religious publications. "It is virtually self-evident that the Free Exercise Clause does not require an exemption from a governmental program unless, at a minimum, inclusion in the program actually burdens the claimant's freedom to exercise religious rights."

*Id.* at 18, 109 S.Ct. at 901. In that case, Texas had presented no evidence that the payment of sales tax by the purchasers of religious materials would offend their religious beliefs or inhibit religious activity. *Id.* Thus, the plurality opinion concluded, Texas could not persuasively claim that the sales tax exemption for religious materials was compelled by the Free Exercise Clause. *Id.*

The plurality opinion also stated:

> Texas' further claim that the Establishment Clause mandates or at least favors its sales tax exemption for religious periodicals is equally unconvincing. Not only does the exemption seem a blatant endorsement of religion, but it appears, on its

face, to produce greater state entanglement with religion than the denial of an exemption. *Id.* at 20, 109 S.Ct. at 902. Thus, the plurality opinion ultimately concluded that Texas' sales tax exemption for religious publications violated the First Amendment. *See id.* at 21–25, 109 S.Ct. at 903–05.

Clearly, the statute in question in *Texas Monthly, Inc.* was quite similar to the one under scrutiny in the instant matter. However, the department argues that because Justice Brennan's plurality opinion failed to garner a majority of the Justices who agreed both upon the result and the underlying rationale for that result, we should not follow that decision as binding precedent in ruling on the instant motions for summary judgment. *See, e.g., CTS Corporation v. Dynamics Corporation of America,* 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) (The reasoning of a plurality opinion which does not represent the views of a majority of the Court is not binding on the Court).[8] Rather, the department argues that the Supreme Court's opinion in *Walz v. Tax Commission of New York City,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) should control our disposition of the instant motions.

In *Walz,* the Supreme Court considered whether a tax exemption for the real property of religious organizations contained in Article 16, Section 1 of the New York Constitution violated the Establishment Clause. The relevant constitutional provision stated, in pertinent part:

'Exemptions from taxation may be granted only by general laws. Exemptions may be altered or repealed except those exempting real or personal property used exclusively for religious, educational or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit.'

*Walz,* 397 U.S. at 666–67, 90 S.Ct. at 1410.

This constitutional provision was implemented through section 420 of the New York Real Property Tax law which stated, in pertinent part:

Real property owned by a corporation or association organized exclusively for the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, medical society, library, patriotic, historical or cemetery purposes ... and used exclusively for carrying out thereupon one or more of such purposes ... shall be exempt from taxation as provided in this section.

*Id.* The Supreme Court ultimately upheld the foregoing real property exemption because it was a reasonable accommodation to religion as required by the Free Exercise Clause, and such an exemption was rooted in both prior case law and a historical tradition of exempting such real properties from taxation which stretched back to the inception of our nation. *See, Id.* at 674–80, 90 S.Ct. at 1414–17.

However, in considering whether such an exemption violated the Establishment Clause, the Supreme Court noted that:

The legislative purpose of a property tax exemption is neither the advancement nor the inhibition of religion; it is neither sponsorship nor hostility. New York, in common with the other States, has determined that certain entities that exist in a harmonious relationship to the community at large, and that foster its "moral or mental improvement," should not be inhibited in their activities by property taxation or the hazard of loss of those properties for nonpayment of taxes. It has not singled out one particular church or religious group or even churches as such; rather, it has granted exemption to all houses of religious worship within a broad class of property owned by nonprofit, quasi-public corporations which include hospitals, libraries, playgrounds, scientific, professional, historical, and patriotic groups. The State has an affirmative policy that consid-

---

**8.** However, some courts have relied exclusively on *Texas Monthly, Inc.* to find a violation of the Establishment Clause. *See, e.g., Finlator v. Pow-* ers, 902 F.2d 1158 (4th Cir.1990); *Thayer v. South Carolina Tax Commission,* 307 S.C. 6, 413 S.E.2d 810 (1992).

ers these groups as beneficial and stabilizing influences in community life and finds this classification useful, desirable, and in the public interest.

*Id.* at 672–73, 90 S.Ct. at 1413.

The Supreme Court also acknowledged that:

Determining that the legislative purpose of tax exemption is not aimed at establishing, sponsoring, or supporting religion does not end the inquiry, however. We must also be sure the end result—the effect—is not an excessive government entanglement with religion. The test is inescapably one of degree. Either course, taxation of churches or exemption, occasions some degree of involvement with religion. Elimination of exemption would tend to expand the involvement of government by giving rise to tax valuation of church property, tax liens, tax foreclosures, and the direct confrontations and conflicts that follow in the train of those legal processes.

Granting tax exemptions to churches necessarily operates to afford an indirect economic benefit and also gives rise to some, but yet a lesser, involvement than taxing them. In analyzing either alternative the questions are whether the involvement is excessive, and whether it is a continuing one calling for official and continuing surveillance leading to an impermissible degree of entanglement. . . .

*Id.* at 674–75, 90 S.Ct. at 1414. Relying on the historical exemption from taxation accorded to places of worship, its widespread application throughout the country, and the lack of government involvement in its administration, the Supreme Court ultimately concluded that the exemption relating to real property did not violate the Religion Clauses of the First Amendment. *Id.* at 676–80, 90 S.Ct. at 1415–17.

We believe that the sales tax exemption under review in this case is quite distinct from the New York property tax exemption which was upheld by the Supreme Court in *Walz*. It is one thing for a state to exempt from taxation the real property owned by a religious organization which is used exclusively for religious worship. It is quite a

different matter for a state to exempt from taxation tangible personal property of a religious nature which is sold at retail. The former practice is found in every state of this country, and it has existed since the founding of this country. *See Walz.* The latter practice possesses neither the historical pedigree nor the widespread approval of the former.

Moreover, the tax exemption for real property owned by religious organizations which was upheld in *Walz* was part of a general tax exemption which was accorded to a large number of other various nonprofit institutions. *See Jimmy Swaggart Ministries v. Board of Equalization of California,* 493 U.S. 378, 393, 110 S.Ct. 688, 697, 107 L.Ed.2d 796 (1990) ("[I]n *Walz*" we held that a tax exemption for "religious organizations for religious properties used solely for religious worship," as part of a general exemption for nonprofit institutions, [d]id not violate the Establishment Clause.") (citation omitted and emphasis added). *See also Texas Monthly, Inc.,* 489 U.S. at 15 n. 5, 109 S.Ct. at 900 n. 5 (Brennan, J., plurality) ("Not only did the property tax exemption sustained in *Walz* [e]xtend to a large number of nonreligious organizations that ostensibly served an expressly articulated secular objective that religious groups could reasonably be thought to advance as well; **it also failed to single out religious proselytizing as an activity deserving of public assistance.**") (emphasis added). *But cf. id.* at 38, 109 S.Ct. at 912 (Scalia, J., dissenting) ("[In *Walz*, t]he Court did not approve an exemption for charities that happened to benefit religion; it approved an exemption for religion as an exemption for religion.").

The tax exemptions under scrutiny in the instant case are not so all-encompassing; they relate solely to items of a religious nature which, in some circumstances, are sold by religious organizations. We believe the patent differences between the instant tax exemptions and the one which was upheld in *Walz* demonstrate that they are, both logically and legally, quite distinct.

Rather, we believe that the Supreme Court's opinion in *Jimmy Swaggart Ministries* is more instructive in resolving the in-

stant motions for summary judgment. In that case, the Supreme Court considered the constitutionality of the sales and use tax statute in California. Under Cal.Rev. & Tax. Code § 6051 (West 1987), retailers in the state are required to pay a sales tax "[f]or the privilege of selling tangible personal property at retail." *Jimmy Swaggart Ministries*, 493 U.S. at 381, 110 S.Ct. at 691. As a complement to this sales tax, Cal.Rev. & Tax.Code § 6201 imposes a use tax to reach out-of-state purchases by California residents which is "imposed on the storage, use, or other consumption in [California] of tangible personal property purchased from any retailer". *Id.* Although the use tax is imposed on the purchaser, it is generally collected by the retailer at the time the sale is made. *Id.* Unlike the Tax Code in Pennsylvania, neither the California Constitution nor the California sales and use tax statutes exempt religious organizations from the sales and use taxes, apart from a limited exemption for the serving of meals by those organizations. *Id.*

For a seven-year period, Jimmy Swaggert Ministries conducted numerous evangelistic crusades across the United States, including California, which services were recorded for later sale or broadcast. *Id.* at 382, 110 S.Ct. at 691–92. Religious books, tapes, records, and other religious and nonreligious merchandise were sold by this organization at these crusades. *Id.*

In addition, the organization published a monthly magazine which was sold nationwide by subscription, and contained advertisements for religious books, tapes, and records. *Id.* The magazine included an order form listing the various items for sale in that issue by which consumers could purchase the items. *Id.* Items were also offered for sale through radio, television, and cable television broadcasts, including broadcasts emanating from local California television stations. *Id.*

California notified the organization that its sale of religious materials was not exempt from the California sales tax, and requested the organization to register as a seller to facilitate the reporting and payment of that tax. *Id.* The organization responded to the request and asserted that it was exempt from the sales and use tax under the First Amend-

ment. *Id.* Subsequently, the organization was audited by the California Board of Equalization and advised that it should register as a seller and report and pay sales tax on all sales made at the crusades conducted in California. *Id.* at 382–83, 110 S.Ct. at 691–92.

On appeal to the Supreme Court, the organization argued that California's imposition of the sales and use tax on its sale of religious materials violated both the Free Exercise and Establishment Clauses of the First Amendment. *Id.* at 384, 110 S.Ct. at 692–93. In arguing that the tax violated the Free Exercise Clause, the organization principally relied on the Supreme Court's opinions in *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) and *Follett v. McCormick*, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944). *Id.* at 385–86, 110 S.Ct. at 693–94. In those cases, the Supreme Court had invalidated, under the Free Exercise Clause, the imposition of flat license taxes which served as a precondition to conducting evangelistic activities because the taxes operated as a prior restraint on the exercise of religious liberty. *Id.*

A unanimous Supreme Court rejected the organization's Free Exercise claim, and declined to adopt its expansive reading of *Murdock* and *Follett*, stating that:

> [O]ur concern in *Murdock* and *Follett*— that a flat license tax would act as a precondition to the free exercise of religious beliefs—is simply not present where a tax applies to all sales and uses of tangible personal property in the State.

*Id.* (emphasis in original).

The Supreme Court also acknowledged its prior decision in *Texas Monthly, Inc.*, stating:

> We also note that just last Term a plurality of the Court rejected the precise argument appellant now makes. In *Texas Monthly, Inc.* . . . . Justice BRENNAN, writing for three Justices, held that a state sales tax exemption for religious publications violated the Establishment Clause. *Id.*, at 14–21 [109 S.Ct. at 899–903] . . . In so concluding, the plurality further held that the Free Exercise Clause did not

prevent the State from withdrawing its exemption, noting that "[t]o the extent that our opinions in *Murdock* and *Follett* might be read ... to suggest that the States and the Federal Government may never tax the sale of religious or other publications, we reject those dicta. *Id.*, at 24 [109 S.Ct. at 904–05] ... Justice WHITE, concurring in the judgment, concluded that the exemption violated the Free Press Clause because the content of a publication determined its tax-exempt status. *Id.*, at 24–25, 109 S.Ct. at 904–05 ... Justice BLACK-MUN, joined by Justice O'CONNOR, concurred in the plurality's holding that the tax exemption at issue in that case contravened the Establishment Clause, but reserved the question whether "the Free Exercise Clause requires a tax exemption for the sale of religious literature by a religious organization; in other words, defining the ultimate scope of *Follett* and *Murdock* may be left for another day." *Id.*, at 28 [109 S.Ct. at 907] ... In this case, of course, California has not chosen to create a tax exemption for religious materials, and we therefore have no need to revisit the Establishment Clause question presented in *Texas Monthly*.

We do, however, decide the Free Exercise question left open by Justice BLACK-MUN's concurrence in *Texas Monthly* by limiting *Murdock* and *Follett* to apply only where a flat license tax operates as a prior restraint on the free exercise of religious beliefs. As such, *Murdock* and *Follett* plainly do not support appellant's free exercise claim. California's generally applicable sales and use tax is not a flat tax, represents only a small fraction of any retail sale, and applies neutrally to all retail sales of tangible personal property made in California. California imposes its sales and use tax even if the seller or purchaser is charitable, religious, nonprofit, or state or local governmental in nature ... Thus, the sales and use tax is not a tax on the right to disseminate religious information, ideas, or beliefs per se; rather, it is a tax on the privilege of making retail sales of tangible personal property and on the storage, use, or other consumption of tangible personal property in California.

For example, California treats the sale of a Bible by a religious organization just as it would treat the sale of a Bible by a bookstore; as long as both are in-state retail sales of tangible personal property, they are both subject to the tax regardless of the motivation for the sale or the purchase. There is no danger that appellant's religious activity is being singled out for special and burdensome treatment.

*Id.* at 388–90, 110 S.Ct. at 695–96.

The organization in *Jimmy Swaggart Ministries* also argued that the imposition of the California sales tax violated the Establishment Clause because it fostered "an excessive government entanglement with religion" as prohibited by *Walz*. *Id.* at 392, 110 S.Ct. at 697. The Supreme Court squarely rejected this claim, stating that:

The Establishment Clause prohibits "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz*, supra, at 668 [90 S.Ct. at 1411] ... [I]n *Walz* we held that a tax exemption for "religious organizations for religious properties used solely for religious worship," as part of a general exemption for nonprofit institutions, *id.*, at 666–667 [90 S.Ct. at 1410–1411] ... did not violate the Establishment Clause. In upholding the tax exemption, we specifically noted that taxation of religious properties would cause at least as much administrative entanglement between government and religious authorities as did the exemption ... The issue presented, therefore, is whether the imposition of sales and use tax liability in this case on appellant results in "excessive" involvement between appellant and the State and "continuing surveillance leading to an impermissible degree of entanglement."

At the outset, it is undeniable that a generally applicable tax has a secular purpose and neither advances nor inhibits religion, for the very essence of such a tax is that it is neutral and nondiscriminatory on questions of religious belief. Thus, whatever the precise contours of the Establishment Clause, ... its undisputed core values are not even remotely called into

question by the generally applicable tax in this case.

[W]e hold that California's imposition of sales and use tax liability on appellant threatens no excessive entanglement between church and state....

*Id.* at 393–94, 110 S.Ct. at 697–98 (citations omitted). Thus, the Supreme Court concluded that the generally applicable sales tax which was neutrally imposed on the sale of religious items by the organization violated neither the Free Exercise Clause nor the Establishment Clause of the First Amendment. *Id. See also Hope Evangelical Lutheran Church v. Iowa Department of Revenue and Finance,* 463 N.W.2d 76 (Iowa 1990) (The State's assessment of a consumer use tax on the Church's use of consumer items under a generally applicable sales and use tax violates neither the Free Exercise Clause nor the Press Clause of the First Amendment citing, *inter alia, Jimmy Swaggart Ministries* ).

Based on the foregoing, we are persuaded that the tax exemptions under scrutiny in this case violate both the First Amendment to the United States Constitution and Article 1, Section 3 of the Pennsylvania Constitution. Clearly, under *Jimmy Swaggart Ministries,* the Free Exercise Clause does not require these exemptions, and the collection of tax from these sales would not involve "an excessive government entanglement with religion" as prohibited by the Establishment Clause.

Because the instant exemptions are based solely on the religious nature of the items sold or the entity selling them, and because such an exemption is not required by the Free Exercise Clause, we find that they violate the Establishment Clause of the First Amendment to the United States Constitution and Article 1, Section 3 of the Pennsylvania Constitution. As a result, the petitioners are entitled to judgment as a matter of law, and we grant their motion for summary judgment on these grounds. The department's motion for summary judgment is denied.

## ORDER

NOW, this 1st day of May, 1997, the motion for summary judgment of Felice Newman and Steve Zupcic is hereby granted, and the motion for summary judgment of the *Department of Revenue is denied.* Section 204(28) of the Tax Reform Code of 1971 and section 31.3(22) of Title 61 of the Pennsylvania Code are declared to be violative of the First Amendment to the United States Constitution and Article 1, Section 3 of the Pennsylvania Constitution, and their enforcement is hereby enjoined.

NEWMAN, J., did not participate in the decision in this case.

DOYLE, Judge, dissenting.

Because I believe that the sales tax exemption does not violate the Establishment Clause of the First Amendment to the United States Constitution but, rather, respects the desired separation between church and state, I dissent.

In holding that the sales tax exemption violates the Establishment Clause, the majority relies upon the *plurality* opinion of the United States Supreme Court in *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). I disagree that that decision controls the outcome of this case.

Justice Brennan wrote the plurality decision in *Texas Monthly* on behalf of himself and Justices Marshall and Stevens. Under the "traditional" three-pronged test set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), he found the tax exemption to be unconstitutional because it lacked a secular purpose and because it favored "religious belief in general." *Texas Monthly,* 489 U.S. at 9, 109 S.Ct. at 896 (Brennan, J., plurality).

Justice Blackmun wrote a separate opinion, concurring in the result, which was joined by Justice O'Connor. Although reaching the same result as Justice Brennan under the facts of that particular case, and concluding that "the Establishment Clause prohibits a tax exemption limited to the sale of religious literature," *Id.* at 29, 109 S.Ct. at 907 (Blackmun, J., concurring in result), it is significant that Justice Blackmun did *not* accept the same rationale as Justice Brennan.

Justice Blackmun was particularly critical of what he viewed as Justice Brennan's attempt to subordinate the Free Exercise Clause to the values embodied in the Establishment Clause. *Texas Monthly*, 489 U.S. at 27, 109 S.Ct. at 906 (Blackmun, J., concurring). Justice Blackmun's cursory treatment of the subject does not provide much guidance as to his thinking beyond the fact that he believes the Texas statute violates the Establishment Clause, and that he favors a very "narrow resolution of the case." *Id.* at 28, 109 S.Ct. at 907.

Justice White also concurred in the result, writing yet another concurring opinion, in which he based his conclusion, not on his interpretation of the Establishment Clause, but instead on his belief that the Texas statute infringed upon the Press Clause.

Justice Scalia, joined by Chief Justice Rehnquist and Justice Kennedy, dissented and would have upheld the Texas statute, relying on the Supreme Court's earlier decision in *Walz v. Tax Commission of New York City*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).

Thus, the opinions written by the Supreme Court in *Texas Monthly* in favor of striking down the sales tax exemption are made up of three Justices (Justice Brennan's plurality opinion) who would find that the statute violates the Establishment Clause under the *Lemon* test; a single Justice (Justice White's concurring opinion) who believes the statute violates only the Press Clause; and two Justices (Justice Blackmun's concurring opinion) who, although believing the statute should be struck down under the Establishment Clause, provide no more than a cursory explanation for this conclusion. I am unable to ascertain much, if anything, concerning the rationale underlying Justice Blackmun's opinion beyond the fact that he does not agree with Justice Brennan's or Justice White's rationale on the subject. Thus, because *Texas Monthly* has not garnered a majority of Justices who agreed upon both the result, as well as the underlying rationale for that result, that decision is not binding precedent.

To determine the precedential value of a United States Supreme Court decision where a majority of the Court does not agree on a single rationale, "the holding of the Court may be viewed as that position taken by those members who concurred in the judgment[ ] on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993–94, 51 L.Ed.2d 260 (1977). **When the reasoning of a plurality opinion does not represent the views of a majority of the Court, the opinion is not binding.** *See CTS Corporation v. Dynamics Corporation of America*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). I conclude, therefore, that the opinions in *Texas Monthly* are so splintered that it is impossible to find sufficient common ground between them with which to determine the *ratio decidendi* of the Court.

In the present case, the majority acknowledges the contention that *Texas Monthly* should not be followed as binding precedent, but it then fails to discuss the argument. The majority never offers what it believes to be the Supreme Court's common underlying rationale for finding that the sales tax exemption violated the Establishment Clause.

Remaining unconvinced that *Texas Monthly* articulates a common rationale for striking down the sales tax exemption under the Establishment Clause, I find that *Walz v. Tax Commission of New York City*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), which was adopted by a clear majority of the Supreme Court, is binding upon this Court in resolving the case presently before us.

I disagree with the majority that *Walz* is factually distinguishable from the instant matter. I find irrelevant the distinction between the two kinds of tax exemptions because, in deciding their constitutionality, the subject matter of the tax is, or should be, of absolutely no consequence.

Additionally, I disagree with the majority that the tax exemption in *Walz* was upheld because it encompassed secular nonprofit organizations as well as religious ones. Rather, I find, as did Justice Scalia in *Texas Monthly*, that the *Walz* Court concluded that the statute had a valid legislative purpose solely because it sought to guard against the "latent dangers" of government hostility to-

ward religion "inherent in the imposition of property taxes." *Walz*, 397 U.S. at 673, 90 S.Ct. at 1413; *Texas Monthly* at 36, 109 S.Ct. at 910–11 (Scalia, J., dissenting).

In fact, the *Walz* Court explicitly stated, "We find it unnecessary to justify the tax exemption on the social welfare services of "good works" that some churches perform for parishioners and others. . . ." *Id.* at 674, 90 S.Ct. at 1414. The Court explained that, because the policy of "benevolent neutrality" by the government toward religion seeks to minimize the "day-to-day relationship" between the two entities, "the use of a social welfare yardstick as a significant element to qualify for tax exemption could conceivably give rise to confrontations that could escalate to constitutional dimensions." *Id.* As Justice Scalia explained in his dissent in *Texas Monthly,* the Supreme Court stated in *Corporation of Presiding Bishop of the Church of Jesus Christ of Latter–day Saints v. Amos,* 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987), that the Court " 'has **never** indicated that statutes that give special consideration to religious groups are per se invalid.' " *Texas Monthly,* 489 U.S. at 39, 109 S.Ct. at 912 (Scalia, J., dissenting) (emphasis added).

The *Walz* Court recognized that the granting of tax exemptions historically reflect the concern that "[g]overnments have not always been tolerant of religious activity, and hostility toward religion has taken many shapes and forms. . . ." *Walz*, 397 U.S. at 673, 90 S.Ct. at 1413. The Court explained that the tax exemption was therefore not meant to sponsor religious activity but to **"restrict[ ] the fiscal relationship between church and state"** and to **"complement and reinforce the desired separation insulating from each other."** *Id.* at 676, 90 S.Ct. at 1415 (emphasis added). Thus, the Court concluded that the legislative purpose of the property tax exemption is "neither the advancement nor the inhibition of religion; it is neither sponsorship nor hostility." *Id.* at 672, 90 S.Ct. at 1413.

The *Walz* Court further explained that the tax exemption did not have the primary effect of sponsoring religious activity because, although a tax exemption may have the same economic effect as a state subsidy, it concluded that such "indirect economic benefit" is significantly different for Establishment Clause purposes. The Court stated, "The grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches **but simply abstains from demanding that the church support the state. . . . There is no genuine nexus between tax exemption and establishment of religion."** *Walz*, 397 U.S. at 675, 90 S.Ct. at 1415 (emphasis added).

Likewise, the Court determined that the tax exemption did not produce excessive government entanglement with religion. It stated that the tax exemption created only a minimal and remote involvement between church and state, far less than taxation would actually entail. Indeed, the *Walz* Court rejected "the use of a social yardstick," as discussed above, as an element to qualify for tax exemption, because it would involve excessive government entanglement with religion.

In my view, the *Walz* decision is dispositive of the instant claim because the facts and analysis are exactly on point, and because *Texas Monthly* is not binding upon us. As in *Walz*, by creating the sales tax exemption, the Commonwealth in this case is abstaining from demanding that religious groups support the state. As such, the Commonwealth is merely "restricting the fiscal relationship between the church and state, and, by doing so, "complement[s] . . . the desired separation" that "insulates" one from the other. Therefore, the exemption neither advances nor sponsors religion. Rather, by enacting the tax exemption, the Commonwealth recognizes that "the government may (and sometimes must) accommodate religious practices and it may do so without violating the Establishment Clause." *Texas Monthly,* 489 U.S. at 38, 109 S.Ct. at 912 (Scalia, J., dissenting) (emphasis added).

Finally, I reject the majority's reliance upon *Jimmy Swaggart Ministries v. Board of Equalization of California,* 493 U.S. 378, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990). The majority concludes that because the Supreme Court in that case held that a generally applicable sales tax that was neutrally im-

posed on the sale of all tangible personal property, including religious items, did not violate the *Free Exercise Clause,* therefore, a sales tax *exemption* for religious items *must* violate the *Establishment Clause.* The *Jimmy Swaggart Ministries* decision simply does not support such a conclusion.

To the contrary, the Supreme Court did not hold in *Jimmy Swaggart Ministries* that the imposition of a generally applicable sales tax did not violate the Establishment Clause *because* such a tax did *not* violate the Free Exercise Clause. Rather, the Court determined that the tax was constitutional because it threatened no excessive entanglement between church and state. *See Jimmy Swaggart Ministries,* 493 U.S. at 397, 110 S.Ct. at 699–700. In fact, the Court stated that it has "no need to revisit the Establishment Clause question presented in *Texas Monthly.*" *Jimmy Swaggart Ministries,* 493 U.S. at 389, 110 S.Ct. at 695. It is noteworthy that in *Texas Monthly,* Justice Brennan's conclusion that the tax exemption violated the Establishment Clause did not depend upon a finding that the Free Exercise Clause does not mandate that the sales tax be imposed. Rather, he found the exemption unconstitutional solely because it lacked a secular purpose and favored "religious belief in general."

Thus, the *Jimmy Swaggart Ministries* Court analyzed the Establishment and the Free Exercise Clauses independently of one another, and it refused to apply its holding to the facts under *Texas Monthly.* Indeed, my review of the case law has revealed no decision where the Supreme Court has held that, if a state's action does not violate the Free Exercise Clause, then it automatically violates the Establishment Clause. I daresay none exists for good reason.

In my view, the Supreme Court has created a "neutral zone" where one state may exempt from tax the sale of religious articles without running afoul of the Establishment Clause, and yet, nonetheless, another state may impose a tax on the sale of all goods, *including* religious articles, without running constitutionally afoul of the Free Exercise Clause. There is a "buffer zone," so to speak, where the friction, or "tension," as Justice Blackmun explained in his concurring opinion in *Texas Monthly,* between the Establishment Clause and the Free Exercise Clause is alleviated, and which allows each fundamental right to co-exist in harmony and mutual respect.

I also find the majority's conclusion contrary to the tradition of exemption of religion, recognized by the *Walz* Court, from various taxes before, during and after the framing of the First Amendment's Religion Clauses. As the Supreme Court stated in *Walz,* "Few concepts are more deeply embedded in the fabric of our national life, beginning with pre-Revolutionary colonial times, than for the government to exercise at the very **least this kind of benevolent neutrality toward churches and religious exercise generally** so long as none was favored over others and none suffered interference." *Walz,* 397 U.S. at 676–77, 90 S.Ct. at 1415 (emphasis added).

I believe the majority's holding is contrary to the established jurisprudence of this nation so clearly articulated by Justice Douglas in *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952):

> We make room for as wide a variety of beliefs and creeds as the spiritual needs of man deem necessary.... When the state encourages religious instruction ... it follows the best of our traditions. For it then respects the religious nature of our people and accommodates the public service to their spiritual needs.

*Id.* at 313–14, 72 S.Ct. at 684.

In summary, I do not believe that the Commonwealth of Pennsylvania is constitutionally prohibited from taxing secular publications and exempting religious ones, and would grant summary judgment in favor of the Department.

SMITH, J., joins in this dissenting opinion.