# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| FRED DIMEO AND NANCY DIMEO | : | No. 150 EAL 2025 |
| | : | |
| | : | Petition for Allowance of Appeal |
| v. | : | from the **Unpublished** |
| | : | **Memorandum and Order** of the |
| | : | Superior Court at No. 280 EDA 2024 |
| PETER GROSS, D.O., G.S., PETER | : | (King, Sullivan, Lane, JJ.), entered |
| GROSS, D.O., P.C., PENNSYLVANIA | : | on April 2, 2025, **affirming** the |
| HOSPITAL OF THE UNIVERSITY OF PA | : | Judgment of the Philadelphia County |
| HEALTH SYSTEM, UNIVERSITY OF | : | Court of Common Pleas at No. |
| PENNSYLVANIA HEALTH SYSTEM, | : | 191003447 (Jacquinto, J.), entered |
| TRUSTEES OF THE UNIVERSITY OF | : | on November 27, 2023 |
| PENNSYLVANIA | : | |
| | : | |
| | : | |
| | : | |
| PETITION OF: PETER GROSS, D.O. AND | : | |
| G.S., PETER GROSS, D.O., P.C. | : | |

## CONCURRING STATEMENT

**JUSTICE WECHT**                                    **Filed: December 17, 2025**

Fred and Nancy DiMeo sued Peter Gross, D.O., in 2019. They alleged that Dr. Gross failed to recognize symptoms that preceded the heart attack that Fred DiMeo suffered in 2018. The case progressed through pleading and discovery. On March 23, 2022, the parties were informed that trial would begin on September 25, 2023, with jury selection to occur four days earlier, on September 21, 2023.

Although notified of the trial date eighteen months in advance, neither side requested a continuance until three days before jury selection was scheduled to begin. At a pretrial conference conducted remotely on September 18, 2023, Dr. Gross' attorney asked Philadelphia County Court of Common Pleas Judge Susan Schulman to delay the

upcoming trial for one day so that Dr. Gross, who is Jewish, could observe Yom Kippur.[1] Counsel explained that Yom Kippur would begin at sundown on Sunday, September 24, 2023, and conclude at sundown on Monday, September 25, 2023, the opening day of the trial. Counsel for the DiMeos opposed the continuance because the DiMeos' expert witness, who was scheduled to testify on Monday the 25th (Yom Kippur), already had booked travel in order to testify in person that day and would not be available to testify on Tuesday. Judge Schulman denied Dr. Gross' continuance request given the unavailability of the DiMeos' expert.[2]

One day after Judge Schulman refused to delay the proceedings, Dr. Gross' attorney emailed Judge Carmella Jacquinto—who was assigned to preside over the trial—and made the same continuance request that Judge Schulman had denied. Counsel did not inform Judge Jacquinto of Judge Schulman's earlier ruling. His email stated:

> As I believe the Court is aware, Monday is Yom Kippur, a Jewish Holy day, to [*sic*] which Judge Schulman scheduled the trial to begin at yesterday's pretrial conference.
>
> Dr. Gross is Jewish and therefore, is requesting that we start trial on Tuesday, September 26, 2023.
>
> I would greatly appreciate it if you could extend this courtesy to Dr. Gross.[3]

---

[1] Yom Kippur (the Day of Atonement) is Judaism's holiest day. It marks the end of a ten-day period of repentance that begins with Rosh HaShanah (the New Year). "All restrictions of Sabbath observance apply as well to Yom Kippur, including prohibitions on car travel, use of electronic devices, participation in any commerce or business, and writing notes." Amicus Brief of the Jewish Coalition for Religious Liberty, the Coalition For Jewish Values, and the Louis D. Brandeis Law Society at 7 (footnote omitted).

[2] Judge Schulman heard and decided the motion in her capacity as judicial leader of the medical malpractice program of the Philadelphia County Court of Common Pleas.

[3] R.R. 720a.

Judge Jacquinto's law clerk replied by email that the continuance request was denied, and that trial would begin as scheduled on Yom Kippur. Counsel responded by email, stating: "please advise Judge Jacquinto that I would like the opportunity to place on the record my objection to proceeding to trial in the absence of Dr. Gross, which is a result of his adhering to his religious beliefs, at the appropriate time."[4]

The trial began as scheduled on September 25th, in Dr. Gross' absence. Before the jury entered the courtroom on the first day of trial, Judge Jacquinto acknowledged on the record that she had received counsel's September 19th email requesting a continuance. Judge Jacquinto stated that, after receiving the email, she spoke to Judge Schulman and learned that Judge Schulman already had denied the continuance request because the DiMeos' expert witness was unavailable to testify on Tuesday. Judge Jacquinto, seemingly displeased that counsel had neglected to mention Judge Schulman's earlier ruling, stated that the continuance request was denied "because the [DiMeos'] expert was already arranged to fly in on Sunday to testify on Monday and would not be available to testify on Tuesday."[5] Judge Jacquinto said that Dr. Gross was given "the option of being present or not being present in the courtroom today because of the holy day," and she offered Dr. Gross' counsel the opportunity to inform the jury of the reason for his client's absence.[6]

Judge Jacquinto asked counsel to make no further arguments regarding the continuance, saying "this was already decided before Judge Schulman, and then I had

---

[4]     *Id.* at 724a.

[5]     Notes of Testimony ("N.T."), 9/25,2023, at 8.

[6]     *Id.* ("I have given, obviously, the defendant the option of being present or not being present in the courtroom today because of the holy day. Counsel, if you want to address the jury and let them know, or I can let them know that that's why he's not here; that's up to you.").

gotten a request by defense with no mentioning of that. So that was already decided, and that's my ruling on that."[7] When counsel attempted to bring up the continuance request again, Judge Jacquinto stated: "Counsel, what part of, there is no discussion or argument about that? And I had my staff tell you that as well. Okay. That's it. I made my ruling. Judge Schulman made the ruling, which you neglected to even put in your request to me. Okay? Counsel, we're moving on."[8]

Trial then commenced, with defense counsel informing the jurors that "Dr. Gross is not here today because he is Jewish and this is a High Holy Day, and he is observing that holy day. That's why he could not be with us today."[9] After Yom Kippur, Dr. Gross was present for the remainder of the trial. The jury ultimately returned a $3.5 million verdict in favor of the DiMeos. On appeal, Dr. Gross argued that the trial court's refusal to delay the proceedings for Yom Kippur was both an abuse of discretion and a violation of Dr. Gross' right to freely exercise his religion under both Article I, Section 3 of the Pennsylvania Constitution and the First Amendment to the United States Constitution.[10]

With regard to his constitutional claims, Dr. Gross argued on appeal that the trial court's ruling forced him to choose between his constitutionally protected freedom of religion and his constitutional right to be present at his own trial. He asserted that, under

---

[7]     *Id.*

[8]     *Id.* at 11.

[9]     *Id.* at 49.

[10]     PA. CONST. art. I, § 3 ("All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship."); U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

the First Amendment, "the [trial] court's failure to accommodate [his] religious observance is subject to strict scrutiny because the court forced Dr. Gross 'to abandon one constitutional right in favor of the other[.]'"[11]  According to Dr. Gross, the trial court's decision "cannot survive a strict scrutiny analysis" because "the United States Supreme Court has repeatedly held that a governmental action substantially burdens religious exercise 'when it presents an individual with a Hobson's choice between receipt of an important benefit and the exercise of one's religious faith.'"[12]  Dr. Gross also argued that the trial court's refusal to continue the proceedings for Yom Kippur violated Article I, Section 3 of the Pennsylvania Constitution.

The Superior Court did not address Dr. Gross' constitutional claims, deciding instead that the case could "be resolved without reaching the constitutional question."[13] The panel ruled that the trial court did not abuse its discretion in denying Dr. Gross' continuance request because that request was made just one week before trial was scheduled to begin.[14]  The intermediate court began its analysis with Rule 216(c) of the Rules of Civil Procedure, which states:

> No application for a continuance shall be granted if based on a cause existing and known at the time of publication or prior call of the trial list unless the same is presented to the court at a time fixed by the court, which

---

[11]     *DiMeo v. Gross*, 2025 WL 1013398, at *3 (Pa. Super. 2025) (quoting Dr. Gross' Superior Court brief).

[12]     *Id.*

[13]     *DiMeo*, 2025 WL 1013398, at *3 (citing *Renner v. Court of Common Pleas of Lehigh County*, 234 A.3d 411, 417 n.6 (Pa. 2020), which held that, "when a case raises both constitutional and non-constitutional issues, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds").

[14]     *Id.* at *4 (citing *Zappacosta v. McAvoy*, 325 A.3d 782, 786 (Pa. Super. 2024) for the principle that "[a] trial court is vested with broad discretion in determining whether a request for a continuance should be granted, and an appellate court should not disturb its decision unless an abuse of that discretion is shown").

shall be at least one week before the first day of the trial period. Applications for continuances shall be made to the court, or filed in writing with the officer in charge of the trial list, after giving notice of such application by mail, or otherwise, to all parties or their attorneys. Each court may, by local rule, designate the time of publication of the trial list for the purposes of this rule.[15]

The Superior Court invoked its ruling in *Baysmore v. Brownstein*.[16] There, the intermediate court held that, "[w]hile certain exceptions exist to [Rule 216(c)], whereby the court may in its sound discretion grant a request for a continuance due to the absence of a party or witness, the court may still demand a showing of diligence on the part of the movant before so granting."[17] Citing *Baysmore*, the panel concluded that Dr. Gross had failed to act with diligence given that he "waited until the week before trial to seek a continuance due to an annual Jewish holy day," despite knowing for more than eighteen months that trial was scheduled to begin on Yom Kippur.[18]

The panel stressed that its decision does not "foreclose[e] continuance requests based upon religious observances."[19] Rather, the panel stated, "we simply mean to amplify the notion that courts may demand a showing of diligence on the part of the movant before granting such requests."[20] Because "[a] quick calendar search would have revealed the trial's conflict with Yom Kippur," and because Dr. Gross "waited until the eleventh hour, after the scheduling of expert witnesses, to request a continuance," the

---

[15]     Pa.R.Civ.P. 216(c).

[16]     771 A.2d 54 (Pa. Super. 2001).

[17]     *Baysmore v. Brownstein*, 771 A.2d 54, 58 (Pa. Super. 2001).

[18]     *DiMeo*, 2025 WL 1013398, at *7.

[19]     *Id.*

[20]     *Id.*

panel concluded that the request was not made diligently and that the trial court therefore did not abuse its discretion in denying it.[21]

Dr. Gross seeks our review of the Superior Court's ruling, arguing that it conflicts with Article I, Section 3 of the Pennsylvania Constitution as well as the United States Supreme Court's free exercise jurisprudence under the federal Constitution. Dr. Gross maintains that the Pennsylvania Constitution requires that there be "a substantial overriding governmental interest before subordinating religion to the demands of the civil order."[22] He argues that the lower courts did not identify such a substantial overriding governmental interest here, and that they did not "articulat[e] a compelling interest in proceeding with trial on Yom Kippur."[23] Dr. Gross asserts that the trial court's refusal to delay the start of his trial until after Yom Kippur violated his rights under the Pennsylvania Constitution.

Turning to his First Amendment claim, Dr. Gross argues that the denial of his continuance request must satisfy strict scrutiny. Dr. Gross acknowledges that, under *Employment Division v. Smith*,[24] "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."[25] He argues that the trial court's denial of his continuance request was neither neutral nor generally applicable, which means that

---

[21] *Id.*

[22] Petition for Allowance of Appeal at 24 (quoting Gary S. Gildin, Coda to William Penn's Overture: Safeguarding Non-Mainstream Religious Liberty Under the Pennsylvania Constitution, 4 U. Pa. J. Const. L. 81, 92, 120 (2001)).

[23] *Id.* at 26.

[24] 494 U.S. 872 (1990).

[25] Petition for Allowance of Appeal at 28 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993), which in turn cited *Employment Division v. Smith*, 494 U.S. 872 (1990)).

"the trial court needed to show that its decision was 'narrowly tailored' to advance a 'compelling governmental interest.'"[26] According to Dr. Gross, the trial court's decision cannot survive strict scrutiny because the court failed to "articulate a compelling interest for 'going straight through' with trial" despite Dr. Gross' religious objection.[27] Even if the court had identified such a compelling interest, Dr. Gross argues, the court still "failed to explain how forging ahead with trial on Yom Kippur could be the least restrictive means of advancing that interest."[28]

I have misgivings about the Superior Court's opinion in this case. I joined this Court's decision to deny Dr. Gross' petition for allowance of appeal because he waived the constitutional issues that he now seeks to litigate. Dr. Gross' attorney initially requested a continuance not in writing but during a September 18, 2023 pretrial status conference that was conducted remotely via Zoom. The pretrial conference proceeded off-the-record, but Dr. Gross' attorney does not claim to have argued at that conference that a refusal to continue the proceedings for Yom Kippur would violate Dr. Gross' rights under either Article I, Section 3 or the First Amendment.[29]

---

[26] *Id.* at 31 (quoting *Church of Lukumi*, 508 U.S. at 531-32). Regarding neutrality, Dr. Gross argues that the trial court elevated the DiMeos' "desire to start trial on a specific date and their expert's schedule to an importance at least equal to" Dr. Gross' right to exercise his religion, which he claims demonstrates a "hostility" toward religion and "cannot be more probative of non-neutral conduct." Id. at 29. He also asserts that the trial court's decision was not generally applicable because it was "highly discretionary" and was made based upon an individualized assessment of the reasons for the request. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021) ("A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" (quoting *Smith*, 494 U.S. at 884)).

[27] *Id.* at 31.

[28] *Id.* at 32.

[29] Affidavit of Kevin H. Wright, Esq. ("During the conference I raised that my client, Dr. Gross is Jewish, and requested that trial begin on Tuesday, September 26, 2023, to (continued…)

After Judge Schulman denied the continuance request, Dr. Gross did not seek reconsideration of the ruling or file any sort of written motion. Instead, he emailed Judge Jacquinto with the same request. Counsel's email to Judge Jacquinto did not frame the requested continuance as a constitutional imperative. Counsel did not mention the United States Constitution or the Pennsylvania Constitution at all. After Judge Jacquinto's law clerk stated that the continuance request was denied, counsel replied by email that he "would like the opportunity to place on the record [his] objection to proceeding to trial in the absence of [Dr. Gross], which is a result of his adhering to his religious beliefs."[30] That wording may suggest some dawning recognition that no constitutional objection had yet been asserted. Nevertheless, when the issue was next addressed on the morning of trial, counsel for the absent Dr. Gross never managed to raise a constitutional claim. At that time, Judge Jacquinto demanded "no discussion or argument" concerning the continuance request, apparently frustrated over counsel's handling of that request.[31]

Because it was not until after trial that Dr. Gross raised the constitutional arguments that he now asks our Court to review, those arguments are waived.[32] Dr. Gross faults Judge Jacquinto for failing to analyze his continuance request under the Free

---

permit my client to observe his religious beliefs as Monday, September 25, 2023, was Yorn Kippur.")

[30] *Id.* at 724a.

[31] N.T. at 11 ("Counsel, what part of, there is no discussion or argument about that? And I had my staff tell you that as well. Okay. That's it. I made my ruling. Judge Schulman made the ruling, which you neglected to even put in your request to me. Okay? Counsel, we're moving on.").

[32] *Commonwealth v. York*, 465 A.2d 1028, 1032 (Pa. Super. 1983) ("[A] new and different theory of relief may not be successfully advanced for the first time on appeal."); *see* Answer to Petition for Allowance of Appeal at 17 ("Dr. Gross failed to preserve the issues on which his request for *allocatur* is based. He never raised them in pretrial proceedings or at trial or even filed a motion for a continuance in which he could have set forth any arguments he wished.").

Exercise Clause, suggesting that the court was required: (1) to "articulate a compelling interest for 'going straight through' with trial" despite Dr. Gross' religious conflict; and (2) to consider less restrictive alternatives such as moving the trial date entirely or allowing the DiMeos' expert to testify remotely.[33] But Dr. Gross never argued that a continuance was mandated under the First Amendment. Instead, he raised the possibility of a one-day delay, and framed the continuance request as a "courtesy" rather than a constitutional requirement.[34]

Similarly, Dr. Gross failed to mention the Pennsylvania Constitution in connection with his continuance request. Despite that failure, Dr. Gross claims now that the trial court erred in failing to analyze his continuance request under Article I, Section 3.[35] Dr. Gross asks our Court to accept review in this case and to hold "that Article I, Section 3 provides more expansive protection for religious liberty than the federal Constitution."[36] This argument triggers issue-preservation requirements that were not satisfied here.[37]

I agree that *allocatur* should not be granted in this case in light of issue preservation pitfalls. But I wish to highlight a deficiency in the Superior Court's analysis. It seems that the panel below believed that it could avoid addressing Dr. Gross' constitutional

---

[33] Petition for Allowance of Appeal at 31-32.

[34] R.R. 720a.

[35] Petition for Allowance of Appeal at 25 ("[N]either the trial court nor Superior Court conducted any analysis, let alone an 'independent analysis' of Dr. [Gross'] rights under the Pennsylvania Constitution.").

[36] *Id.* at 36.

[37] *See Commonwealth v. Bishop*, 217 A.3d 833, 840-41 (Pa. 2019) ("References to the state constitution, without some discussion or argument concerning the scope of its protections, are not enough to alert the trial court to the issue of a possible difference between the rights afforded by the state constitution and those provided by the [federal charter]." (quoting *State v. Gomez*, 932 P.2d 1, 10 (N.M. 1997)).

arguments so long as it held that the trial court did not abuse its discretion in denying the continuance based on Dr. Gross' lack of diligence.[38] I do not share this view.

It is true that courts may (and often should) avoid deciding constitutional issues in certain circumstances. For example, "if a statute is susceptible of two reasonable constructions, one of which would raise constitutional difficulties and the other of which would not," courts will typically adopt the latter construction and avoid analyzing the constitutional issue altogether.[39] But that principle does not apply here, where there are no issues of statutory interpretation and the constitutional issues are potentially dispositive.[40] Here, for example, Dr. Gross contends that the lower courts' application of the diligence requirement is subject to strict scrutiny under the Free Exercise Clause, an inquiry which he claims the trial court's decision cannot survive. So, simply to agree with the trial court that Dr. Gross failed to exercise diligence is to fail to answer the question presented and to fail to resolve the appeal. Similarly, Dr. Gross' claim that the trial court

---

[38] The intermediate court did not rule that Dr. Gross waived his constitutional arguments. Had it done so, its decision would comport with the circumstances of this case. Instead, however, the panel invoked the constitutional avoidance doctrine. It focused its analysis on whether the trial court abused its discretion in holding that Dr. Gross failed to exercise diligence under Rule 216(c) and *Baysmore*. *See DiMeo*, 2025 WL 1013398, at *3 ("[W]e believe that the issue presented here, *i.e.*, the propriety of the denial of a request for the continuance of a civil trial, can be resolved without reaching the constitutional question."); *id.* at *6 ("We agree with the court's conclusion that [Dr. Gross] failed to act with diligence in requesting a continuance.").

[39] *Wolf v. Scarnati*, 233 A.3d 679, 696 (Pa. 2020) ("[I]f a statute is susceptible of two reasonable interpretations, we will interpret the statute in such a manner so as to avoid a finding of unconstitutionality."); *accord* 1 Pa.C.S. § 1922(3) (stating that courts may presume that "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth"); *see, e.g., Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that the Immigration and Nationality Act does not authorize indefinite detention of deportable immigrants but rather contains an implied time limitation, thus avoiding a potential constitutional issue).

[40] *See, e.g., Jefferson Cnty. Court Appointed Emps. Ass'n v. Pa. Lab. Relations Bd.*, 985 A.2d 697, 705, n. 13 (Pa. 2009).

was required to grant him a continuance for Yom Kippur under Article I, Section 3 of the Pennsylvania Constitution cannot be sidestepped simply by affirming the trial court's lack-of-diligence finding.

Because Dr. Gross waived his constitutional claims, the Superior Court's misapplication of the constitutional avoidance doctrine ultimately makes no difference in the outcome. However, the Superior Court's decision in this case should not be seen as a template adaptable for use in similar cases in the future, given that the panel failed to address potentially dispositive constitutional issues.

Dr. Gross' petition raises interesting and significant questions regarding the scope of religious liberty protections under both Article I, Section 3 and the First Amendment.[41] I agree with Dr. Gross that the reason the panel below gave for leapfrogging his constitutional arguments was unsound. I nevertheless join today's order denying

---

[41] As Dr. Gross notes, this Court opined in *Wiest v. Mt. Lebanon School District*, that Article I, Section 3 "does not transcend the protection of the First Amendment," 320 A.2d 362, 366 (Pa. 1974), a holding which we reaffirmed five years later in *Springfield School District v. Department of Education*, 397 A.2d 1154, 1170-71 (Pa. 1979). Those decisions predated *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991), and both involved establishment clause issues rather than generally applicable laws that infringed upon religious liberty. Given the text of Article I, Section 3 and the history behind the provision, this Court might be wise in a future case to reconsider whether Article I, Section 3 should be interpreted in lockstep with evolving First Amendment jurisprudence. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 614 (2021) (Alito, J., concurring) (calling on the Court to overrule *Employment Division v. Smith*); Gary S. Gildin, *The Supreme Court and Religious Liberty: The Competing Visions of William Penn and Chief Justice John Bannister Gibson*, in THE SUPREME COURT OF PENNSYLVANIA: LIFE AND LAW IN THE COMMONWEALTH, 1684-2017, 137-47, 144 (2017) ("Since [*Employment Division v. Smith*], the Pennsylvania Supreme Court has not taken up the issue of the standard of scrutiny that would be applied under the state Constitution to laws that have the effect of burdening liberty of conscience."); *see also Allegheny Reproductive Health Ctr. v. Pa. Dept. of Human Servs.,* 309 A.3d 808, 980 (Pa. 2024) (Wecht, J., concurring) ("Where the Establishment and Free Exercise Clauses of the First Amendment are tied to religion, Article I, Section 3 expressly extends to the more sweeping realm of 'conscience.'").

*allocatur* because the issue preservation concerns here make this case a poor vehicle for deciding the important constitutional issues that loom in the background.